IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STEPHANIE BROWN,<br><br>Plaintiff,<br><br>v.<br><br>WAYNE NERO and THE CITY OF GEORGETOWN,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 1:15-cv-965-RP |

**ORDER**

Before the Court are Plaintiff's Motion for Partial Summary Judgment, (Dkt. 36); Defendants' Response, (Dkts. 39 & 43); Plaintiff's Reply, (Dkt. 46); and Defendants' Sur-repy, (Dkt. 48). For the following reasons, the Court grants Plaintiff's motion in part and denies it in part.

## I. Background

Plaintiff Stephanie Brown ("Brown") filed this action on October 28, 2015, naming as defendants the City of Georgetown ("the City") and Georgetown's police chief, Wayne Nero ("Chief Nero"). Brown was previously a police officer with the Georgetown Police Department ("the Department"). In 2012, she ended a romantic relationship with another police officer, Eric Poteet. Following the breakup, Poteet filed a complaint with the Georgetown Police Department, alleging that Brown had been taking his prescription pain medications and had ingested mescaline, a controlled substance. In January 2013, the Department investigated these allegations. Following the investigation, Chief Nero determined that Brown had taken Poteet's prescription drugs, ingested mescaline, and had been untruthful when questioned about her use of drugs. On June 11, 2013, Chief Nero indefinitely suspended Brown, effectively terminating her employment.

Because it was considered a "disciplinary" action, Brown had the right to appeal her suspension to an independent hearing examiner under the Texas Fire Fighters' and Police Officers' Civil Services Act ("the Civil Services Act"). *See* Tex. Loc. Gov't Code §§ 143.053, 143.057. Brown invoked her right to appeal and a hearing was held, which Chief Nero attended. After the hearing but prior to the issuance of the hearing examiner's decision, Chief Nero initiated a meeting with the Williamson County Attorney and the Williamson County District Attorney and informed them of Brown's alleged misconduct. In response, the two prosecutors issued a joint "no-confidence" letter to Chief Nero on October 31, 2013, informing him that their offices would no longer accept cases in which Brown was involved as they believed her past untruthfulness undermined her ability to testify as a witness.

On November 1, 2013, the hearing examiner issued his decision. He determined that Brown had used pain medications prescribed for Poteet. However, he also determined that Brown had her own prescription for the medication and did not use the medication for recreational purposes. The hearing examiner also determined that the City had failed to meet its burden of proof with respect to the charge that Brown had taken mescaline and the charge that she had been untruthful during the investigation. The hearing examiner reduced Brown's suspension to fifteen days and ordered her reinstated with back pay and benefits.

On November 7, 2013, the City reinstated Brown. However, the next day, the City again terminated Brown. In a letter informing Brown of her termination, Chief Nero stated that, in light of the no-confidence letter sent by the county and district attorneys, Brown was unable to testify in court and therefore could not perform an essential job function. Chief Nero also informed Brown that because her termination was "non-disciplinary," she did not have a right to appeal under the Civil Services Act. Brown nonetheless attempted to appeal her termination to the City's Civil Service

Commission. Her appeal was denied because her termination was not for disciplinary reasons but rather because she could not perform an essential job function.

Brown then filed a lawsuit in state court, seeking a declaratory judgment stating that her termination was a disciplinary suspension triggering a right to appeal under the Civil Services Act. The state district court granted the defendants' plea to the jurisdiction, holding that it lacked jurisdiction because the Civil Services Act does not allow an officer to appeal a non-disciplinary termination. Brown appealed. The court of appeals reversed, holding that Brown's termination was a disciplinary suspension, and remanded the case so that Brown could pursue an administrative appeal. *Brown v. Nero*, 477 S.W.3d 448, 452 (Tex. App. 2015), *review denied* (Jan. 8, 2016). The parties then settled the state court action. As part of the settlement, Brown has been reinstated and provided full back pay.[1]

In this federal action, Brown asserts causes of action, under 42 U.S.C. § 1983, for violations of her Fourteenth Amendment rights to procedural and substantive due process and a cause of action under state law for defamation. The Court previously dismissed her defamation claim. Brown now moves for summary judgment on her procedural and substantive due process claims.

---

[1] (*See* Defs.' Sur-reply, Dkt. 48, at 2 n.1 ("Defendants would inform the Court that Plaintiff has been reinstated to her position with the Georgetown Police Department with full back pay and benefits in settlement of the state court case.")). At first blush, the state court settlement providing Brown reinstatement and full back pay would seem to render this action moot. However, in addition to back pay, Brown is seeking compensatory damages for "irreparable harm to [her] reputation, and extreme mental anguish, pain and suffering," among other alleged injuries. (Am. Compl., Dkt. 14, ¶ 32). Brown's prayer for damages above and beyond back pay constitutes an ongoing, justiciable controversy. *See Morehouse v. Jackson*, 614 F. App'x 159, 164 (5th Cir. 2015) (holding that a plaintiff's procedural due process claims were rendered moot by resolution of parallel state proceedings, but would have remained justiciable if the plaintiff had elected to seek damages); *see also Wilson v. Taylor*, 658 F.2d 1021, 1032–33 (5th Cir. 1981) (holding that a plaintiff may recover damages for emotional distress and reputational damage incident to a deprivation of due process in the employment context).

## II. **Summary Judgment Standard**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party bears the burden of persuasion at trial, it must also "support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331.

Once the movant carries its initial burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by presenting evidence indicating there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court views the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F. 3d at 174.

## III. Discussion

Brown moves for partial summary judgment on the issue of whether the City is liable for violating her Fourteenth Amendment rights to procedural and substantive due process. The Court first addresses whether Brown's procedural due process rights were violated. The Court then addresses whether her substantive due process rights were violated. Finally, the Court inquires whether, assuming her due process rights were violated, Brown has demonstrated that the violation was caused by an official policy or custom, as is necessary to hold a municipality liable under *Monell v. New York City Department of Social Services,* 436 U.S. 658 (1978).

### A. Procedural Due Process

If a public employee has been conveyed a property interest in continued employment, then the employee cannot be terminated without first being afforded constitutional due process. *See Bd. of Regents v. Roth*, 408 U.S. 564 (1972). Property interests "are not created by the Constitution." *Id.* at 577. "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* "A public employee has a property interest in her job if she has a legitimate claim of entitlement to it, a claim which would limit the employer's ability to terminate the employment." *Giles v. Shaw Sch. Dist.*, 655 F. App'x 998, 1004 (5th Cir. 2016) (quoting *Johnson v. Sw. Miss. Reg'l Med. Ctr.*, 878 F.2d 856, 858 (5th Cir. 1989)). A property interest in continued employment "can be created by state statute or by contract." *Id.* "Once a state has conferred a property right, it cannot constitutionally deprive such an interest without procedural safeguards." *Schaper v. City of Huntsville*, 813 F.2d 709, 714 (5th Cir. 1987).

Here, Brown contends—and Defendants do not dispute—that she had a protected property interest in continued employment as a police officer with the Georgetown Police Department. Brown's property interest in continued employment is created by the Civil Services Act, which states that its purpose is to ensure that police officers and fire fighters "have permanent employment

tenure as public servants." Tex. Loc. Gov't Code § 143.001; *see also City of Beaumont v. Spivey*, 1 S.W.3d 385, 388 (Tex. App.—Beamont 1999, pet. denied) (Under Chapter 143 . . . a police officer has certain due process rights that are triggered whenever the officer is subjected to disciplinary action such as suspension or, in this case, dismissal."). Accordingly, the only question for the Court is whether Brown was provided the minimum constitutionally required process.

The parties dispute the relevance of state law in determining how much process is constitutionally required. Brown argues that if the state statutorily promises tenured employees certain procedural rights, then the Constitution requires the state to live up to its promise. Accordingly, Brown contends that if the City, in terminating her employment, violated the Civil Services Act, it necessarily deprived her of constitutionally required procedural due process. Brown relies heavily on the Fifth Circuit's opinion in, *Ferguson v. Thomas*, in which the court of appeals stated, "When published rules and regulations establish a particular statutory procedure for the termination of a teacher's employment, they may add to the constitutional minimum. If they do, such regulations must also be followed." 430 F.2d 852, 856 (5th Cir. 1970). However, in the nearly fifty years since the Fifth Circuit made this statement, it has clearly reversed course. In *Levitt v. the University of Texas at El Paso*, the Fifth Circuit clarified its holding in *Ferguson*: "The additions to the 'constitutional minimum' we referred to in *Ferguson* arise only when the procedures promised are denied in such a manner that the constitutional minimum is itself denied or an independent deprivation is effected." 759 F.2d 1224, 1230 (5th Cir. 1985). The *Levitt* court held that "[t]here is not a violation of due process every time a . . . government entity violates its own rules. Such action may constitute a breach of contract or violation of state law, but unless the conduct trespasses on federal constitutional safeguards, there is no-constitutional deprivation." *Id.* The Fifth Circuit has repeatedly reaffirmed this holding. *See, e.g. Dearman v. Stone Cty. Sch. Dist.*, 832 F.3d 577, 584 (5th Cir. 2016) ("The School District may have violated state law when denying Dearman an official

nonrenewal hearing. Given, however, that Dearman did receive both notice and an opportunity to respond, this state-law violation does not also amount to a violation of federal due process."); *Brown v. Texas A & M Univ.*, 804 F.2d 327, 335 (5th Cir. 1986) ("[T]he University's admitted failure to comport with its internal pretermination procedures does not by itself amount to a violation of the Due Process Clause. The failure of a state agency to comply with its internal regulations is insufficient as a matter of law to establish a violation of Due Process, because constitutional minima nevertheless may have been met.").

Thus, Brown's contention that Defendants violated the Civil Service Act is inapropos. The only relevant question is whether the procedure the City afforded Brown met the federal constitutional minimum. Generally, procedural due process simply requires a person deprived of a liberty interest to be provided "an opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976). Even under the more accommodating federal constitutional standard, Brown argues she was deprived of adequate due process. She asserts that she was never provided a meaningful opportunity to be heard, either prior to her November 8th termination or following her termination. The Court begins with her pretermination claim and then moves to her post-termination claim.

**1. Pretermination Due Process**

In *Cleveland Board of Education v. Loudermill,* the Supreme Court held that procedural due process requires "'some kind' of hearing prior to the discharge of an employee who has a constitutionally protected property interest in [her] employment." 470 U.S. 532, 542 (1985). However, "the pretermination 'hearing,' though necessary, need not be elaborate." *Id.* at 545. The pretermination hearing is simply "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–546. "The tenured public employee

is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546; *accord Browning v. City of Odessa, Tex.*, 990 F.2d 842, 844 (5th Cir. 1993) ("[A]n informal hearing which allows the employee to give [her] version of the facts sufficiently hedges against an erroneous dismissal and likewise satisfies the requirements of due process.").

Defendants believe Brown was provided an opportunity to be heard consistent with the requirement enunciated in *Loudermill.* On October 31, 2013, Chief Nero sent Brown and her attorney a letter informing them that, even if the hearing examiner were to reverse his previous indefinite disciplinary suspension, he was considering terminating Brown's employment for non-disciplinary reasons. (Oct. 31 Letter, Dkt. 43-1). The letter advised that because the Williamson County Attorney and the Williamson County District Attorney would no longer allow Brown to testify, he believed Brown was no longer capable of performing an essential function of her job. (*Id.*) Chief Nero attached a copy of the no-confidence letter sent to him by the county prosecutors. (*Id.* at 2). Chief Nero further stated that he intended his letter to serve as "written notification" of the potential non-disciplinary action and that he was willing to give Brown "an opportunity to provide information [she] would want [him] to consider prior to me making a final decision." (*Id.* at 1). The letter concluded by scheduling a meeting for November 6, 2013 in Chief Brown's office. (*Id.*)

Brown was thus provided (1) written notification of the charges against her, (2) a copy of the no-confidence letter on which those charges were based, and (3) an opportunity to meet with Chief Nero and provide her side of the story. This pretermination process, while minimal, is consistent with the requirements set forth in *Loudermill. See Browning*, 990 F.2d at 844–45 (finding no procedural due process deprivation where a firefighter was provided notice of the reasons for his dismissal and an informal meeting with the department's chief). Brown elected not to attend the meeting with Chief Nero. (*See* Nov. 4 Letter, Dkt. 36-17). However, her decision not to avail herself of the

process afforded to her does not constitute a deprivation of procedural due process. *Browning*, 990 F.2d at 845 n.7 ("[O]ne who fails to take advantage of procedural safeguards available to him cannot later claim that he was denied due process.").

The Court, therefore, concludes that Brown has failed to demonstrate beyond a genuine issue of fact that the City deprived her of constitutionally adequate pretermination procedural due process.

**2. Post-termination Due Process**

Brown argues that the reason so little pretermination process is required is that the case law all assumes the employee will be afforded robust post-termination process. On this point, Brown is unquestionably correct. In *Loudermill*, the Supreme Court expressly stated that its holding requiring only minimal pretermination process "rests in part on the provisions in [state] law for a full post-termination hearing." 470 U.S. 532 at 546. The Court's conclusion that "the pretermination 'hearing' . . . need not be elaborate" was predicated on the fact that the discharged employee was "later entitled to a full administrative hearing." *Id.* at 546. As the Fifth Circuit has explained, under *Loudermill*, "pretermination process is limited" only "if a governmental employer provides a full post-termination hearing." *Browning*, 990 F.2d at 844; *accord Schaper v. City of Huntsville*, 813 F.2d 709, 716 (5th Cir. 1987) ("But in the event of minimal pretermination safeguards, the substantial private interest one has in not being deprived of his livelihood requires a full hearing after termination."). Here, Brown was provided only an opportunity for a brief, informal meeting with Chief Nero, pretermination process which satisfies but does not exceed the constitutional minimum. Thus, *Loudermill* requires that she be provided robust post-termination process.

The record makes clear that Browning was not provided any post-termination process. Both the letters Chief Nero sent to Brown with regard to her non-disciplinary termination made clear that she did not have a right to appeal. Chief Nero's October 31 letter stated, "Because your inability to

meet the job requirements does not involve 'discipline,' §§ 614.021–.023 of the Texas Government Code do not apply here." (Oct. 31 Letter, Dkt. 43-1, at 1). Chief Nero's November 8 letter similarly stated, "Since this is a non-disciplinary termination, you do not have appeal rights under Chapter 143 of the Texas Local Government Code." (Nov. 8 Letter, Dkt. 36-7, at 2). Brown nonetheless attempted to appeal her termination. In response, Elizabeth Jones, the City's Interim Civil Service Director, sent Brown's lawyer a letter declining to hear the appeal. The letter stated, "Absent disciplinary action against Ms. Hoskins Brown . . . [she] is not entitled to appeal before the Civil Service Commission. . . . Because this termination was not based on disciplinary action, a hearing under the civil service statute is not available to Ms. Hoskins Brown." (Nov. 21 Letter, Dkt. 36-20). In denying Brown a post-termination administrative hearing, the City clearly deprived Brown of her constitutional procedural due process rights, as articulated in *Loudermill*.

The Court notes that Brown, after lengthy state court litigation, was ultimately successful in obtaining a right to an appellate hearing before the Civil Service Commission. Arguably, Brown's ability to successfully seek relief in state court indicates that state law did provide her adequate post-termination process. Indeed, in some instances the Fifth Circuit has found that the availability of judicial review is sufficient to satisfy the constitutional requirement of post-termination procedural due process. For example, in *Murphy v. Collins*, the court of appeals held that the confiscation of a prisoner's property did not require pre-deprivation due process, because the tort of conversion provided the prisoner a post-deprivation remedy in state court. 26 F.3d 541, 543 (5th Cir. 1994). However, in the employment context, the Supreme Court has clearly stated that procedural due process requires that a pretermination opportunity to respond be "coupled with post-termination *administrative* procedures." *Loudermill*, 470 U.S. at 546-48 (emphasis added). The law is thus clear that, at least in the employment context, judicial review alone is insufficient: a discharged employee is entitled to some form of post-termination "administrative review." *Id.* at 535.

Moreover, the Supreme Court has also made clear that a post-termination hearing must be provided "at a meaningful time." *Id.* at 547 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Here, the state appellate court's decision that Brown was entitled to a hearing before the City's Civil Service Commission came nearly two years after she first attempted to appeal her termination. By denying Brown a timely administrative appeal and requiring her to seek relief in state court, the City imposed on Brown an "unreasonably prolonged" process. *Id.* The Court comfortably concludes that being forced to endure protracted state court litigation simply to earn a right to an administrative hearing is not the sort of timely post-termination process envisioned by *Loudermill* and its progeny.

In sum, procedural due process requires that a tenured public employee be provided a full administrative hearing to challenge the termination of her employment. The undisputed evidence before the Court makes clear Brown was denied this right. Accordingly, the Court finds that Brown should be granted summary judgment on the issue of whether the City violated her right to post-termination procedural due process.

**B. Substantive Due Process**

The Court now turns to Brown's claim for violations of her substantive due process rights. In contrast to procedural due process, substantive due process "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992) (quoting *Daniel v. Williams*, 474 U.S. 327, 331 (1986)). A tenured public employee has a substantive due process right to be free from "arbitrary and capricious" decision-making. *E.g. Russell v. Harrison*, 736 F.2d 283, 287 (5th Cir. 1984). "To prove a substantive due process violation in this context, an employee must show that a public employer's decision 'so lacked a basis in fact' that it could be said to have been made 'without

professional judgment.'" *Jones v. Louisiana Bd. of Sup'rs of Univ. of Louisiana Sys.*, 809 F.3d 231, 240 (5th Cir. 2015) (quoting *Texas v. Walker,* 142 F.3d 813, 819 (5th Cir.1998)).

Brown submits evidence suggesting that Chief Nero acted in an arbitrary and capricious manner when he initiated a meeting with the county and district attorneys to inform them that Brown was under investigation for untruthfulness and to solicit a no-confidence letter, despite knowing that the independent hearing examiner had expressed skepticism of the City's allegations against Brown and was not likely to find that she had been untruthful. Brown argues that Chief Nero's decision to terminate her lacked a basis in fact as the decision was made in reliance on a no-confidence letter that he intentionally solicited as a clever means of circumventing the Civil Service Act and did not honestly reflect the views of its authors. Some of the evidence Brown submits in support of this contention is compelling. For example, the Williamson County District Attorney has admitted that she issued the no-confidence letter simply "to be supportive of the Department" and described her issuance of the letter as a "crafty" way "to get around . . . longstanding processes put in place by the agencies and the voters." (May 31 Letter, Dkt. 36-15).

On the other hand, Defendants point to evidence contradicting Plaintiff's characterization of the events leading to her non-disciplinary termination. In Chief Nero's affidavit, he attests that the purpose of his meeting with the district and county attorneys was not to solicit a no-confidence letter, but "to discuss their expectations of the Georgetown Police Department regarding *Brady* exculpatory information." (Nero Aff., Dkt. 36-13, ¶ 3). As part of this conversation, he provided them the findings of the Department's internal investigation of Brown. (*Id.*) Chief Nero's affidavit implies, although it does not explicitly state, that the district attorney and county attorney sent the no-confidence letter on their own initiative, after reviewing the findings of the internal investigation. (*Id.* ¶ 4). Chief Nero further attests that after he received the hearing examiner's decision reinstating Brown, he discussed the decision with the district and county attorneys and asked them if they

wanted to rescind their no-confidence letter, but they "declined to rescind the letter [because] their opinion regarding the credibility of [Brown] was unchanged." (*Id.* ¶ 8).

If Chief Nero's characterization of the relevant events is proven true, it would suggest the City had a strong factual basis for its decision to terminate Brown and that its decision was, therefore, neither arbitrary nor capricious. Accordingly, the Court concludes that there is a genuine issue of fact that precludes granting summary judgment on Brown's substantive due process claim.

**C. Municipal Liability**

Finally, the Court turns to the issue of whether the City[2] is liable for any violation of Brown's due process rights. "A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it 'through some official action or imprimatur.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir.2001)). "To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Id.* "[M]unicipal liability may be imposed for a single decision by municipal policymakers" as long as the decision is made by an "official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 484 (1986). The question of "whether an official has been delegated final policymaking authority is a question of law for the judge, not of fact for the jury." *Gros v. City of Grand Prairie*, 181 F.3d 613, 617 (5th Cir. 1999) (citing *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989)). District courts are directed "to

[2] In her Amended Complaint, (Dkt. 11), Brown does not state in what capacity she is suing Defendant Wayne Nero. However, in her motion for partial summary judgment she clarifies that she suing him only in his official capacity as the City's police chief. Suing a municipal employee in his official capacity is the same as suing the municipality itself. *See, e.g. Sanders v. English*, 950 F.2d 1152, 1159 (5th Cir. 1992) ("Of course, a suit against these defendants in their official capacities is tantamount to a suit against the City itself.").

consider state and local positive law as well as evidence of the [c]ity's customs and usages in determining which [c]ity officials or bodies had final policymaking authority over the policies at issue in [the] case." *Id.* at 616.

"The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 602 (5th Cir. 2001); *see also Bennett v. City of Slidell,* 728 F.2d 762, 769 (5th Cir.1984) ("[T]he delegation of policymaking authority requires more than a showing of mere discretion or decisionmaking authority on the part of the delegee.") Rather, the municipal official "must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Beattie*, 254 F.3d at 602. Critically, for liability to arise, the municipal official must have policymaking authority with regard to the specific type of decision at issue:

> Thus, for example, the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff *is* the official policymaker, *would* give rise to municipal liability. Instead, if county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board.

*Id.* Generally, if a municipal official's decisions in a particular context are subject to review by a higher authority, then the official is not considered final policymaking authority with regard to those decisions. *See Worsham v. City of Pasadena,* 881 F.2d 1336, 1240-41 (5th Cir. 1989) (holding the existence of a council with the authority to review a city mayor's decision to terminate a municipal employee, precluded a finding that the mayor possessed final policymaking authority over employment decisions). However, the "continuous refusal to

exercise some theoretical authority to review a municipal official's policy decisions will, at some point, establish the municipal official as the final policymaking authority by custom or usage having the force of state law." *Gros*, 181 F.3d at 616.

Brown seeks to hold the City liable for the decision to terminate her employment on November 8, 2015 for non-disciplinary reasons. It is undisputed that this decision was made and implemented by Chief Nero. The question for the Court then is whether, as a matter of state or local law or the customs of the City, Chief Nero has been afforded the responsibility to make municipal policy with regard to non-disciplinary employment decisions. Brown does not point to any law, which expressly affords the police chief this sort of policymaking authority. Brown does cites multiple cases where courts have held that a police chief is a final policymaker with regard to law enforcement decisions. *See, e.g. Pineda v. City of Houston*, 291 F.3d 325, 330 (5th Cir. 2002); *Brown v. Bryan Cty., OK*, 219 F.3d 450, 454 (5th Cir. 2000). But these cases are not on point both because they deal with law enforcement decisions, not employment decisions, and because the precise distribution of policymaking authority may differ from municipality to municipality.

Brown does submit some evidence that Chief Nero has final policymaking authority in the employment context. Specifically, Brown points to Chief Nero's deposition testimony, in which he was asked, "[A]re you the policy maker for the Georgetown Police Department?" (Nero Dep., Dkt. 46-1, at 44:14–20). He responded, "Yes." (*Id.*) He was then asked, "When you terminated Brown the second time, did you intend for your decision to be the final decision on the case?" (*Id.*) He responded, "From the police department's perspective, yes." (*Id.*) However, this evidence is insufficient to establish that by custom the City has afforded the policy chief policymaking authority with regard to non-disciplinary employment decisions: First, Chief Nero's statement that he is a policymaker for the

Georgetown Police Department does not specify in what context he has policymaking authority. Specifically, Chief Nero does not state whether his policymaking authority extends beyond law enforcement decisions to include employment decisions. Moreover, this statement fails to substantiate how he has been conferred his policymaking authority or explain how his policymaking authority relates to the authorities of other City officials, such as the Civil Service Director and City Manager. Second, the fact that he viewed his decision as final from the perspective of the police department at best indicates he has been afforded some degree of discretion in the employment context, it does not demonstrate that he is responsible for making employment policy. Nor does it definitely establish the finality of his decision, as it remains possible that his decision was subject to review by other City officials outside the police department.

In sum, it is not clear that state or local law expressly confers Chief Nero with final policymaking authority with regard to non-disciplinary employment decisions. Moreover, the minimal evidence presently before the Court is insufficient to establish that Chief Nero has been conferred this authority by custom or practice. Accordingly, Brown has failed to demonstrate a right to summary judgment on the issue of municipal liability.

## IV. Conclusion

Plaintiff's Motion for Partial Summary Judgment, (Dkt. 36), is hereby **GRANTED IN PART AND DENIED IN PART,** consistent with the terms of this order.

It is hereby established, pursuant to Federal Rule of Civil Procedure 56, that Plaintiff Stephanie Brown's federal constitutional right to procedural due process was violated when she was denied an administrative hearing following the termination of her employment with the Georgetown Police Department on November 8, 2015.

All other relief requested is hereby **DENIED.**

**SIGNED** on March 31, 2017.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE